U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2011 MAY 17  AM 10: 46

CLERK
BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| PETER F. WATERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:10-cv-110 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
REVERSAL AND REMAND OF COMMISSIONER'S DECISION, AND
GRANTING IN PART AND DENYING IN PART COMMISSIONER'S MOTION**
(Docs. 9, 13)

This matter comes before the court on the motion by Peter Waters ("Plaintiff"), pursuant to 42 U.S.C. § 405(g) of the Social Security Act, seeking review of the decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying Plaintiff's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. Pending before the court are Plaintiff's motion seeking an order reversing the Commissioner's decision and remanding the case for further development of the record (Doc. 9), and the Commissioner's motion seeking an order affirming the same. (Doc. 13.) The parties completed briefing on February 9, 2011.

At issue in this case is whether the Commissioner erred in denying Plaintiff SSI benefits because he improperly assessed Plaintiff's impairments and credibility, and he did not follow the treating physician rule.

Plaintiff is represented by Kelly E. Massicotte, Esq. and the Commissioner is represented by AUSA Timothy C. Doherty, Jr.

I.      **Factual and Procedural Background.**

Plaintiff was born in September 1967. He earned a GED and became a certified heavy equipment operator. He has had work experience as an automotive clerk, a carpenter, a night watchman, a painter, a tree trimmer, and most recently as a truck driver for eight years. He stopped working full-time in 2006 after he experienced what doctors considered a pulmonary embolism, which damaged his right lung. In an initial Disability Report completed in June 2007, Plaintiff complained that he was short of breath, used two different inhalers, and became tired and winded easily. He asserted that he could not return to his work as a truck driver because he could have a blood clot at any time and he could not use the truck's stick shift.

Plaintiff filed for SSI benefits on June 12, 2007, alleging disability as of May 5, 2006. His claim was denied both at the initial level and on review by a Federal Reviewing Official. Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). The hearing took place before ALJ Thomas Merrill on September 18, 2009 via videoconference, during which Plaintiff and one of his sisters testified.

**A. The ALJ's Decision.**

On November 18, 2009, the ALJ issued a decision finding that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work and that he was not disabled. (Administrative Record ["AR"] 7-16.) Applying the five-step analysis employed by the Commissioner to ascertain whether a claimant is disabled under the Social Security Act,[1] the ALJ determined at step one that Plaintiff had not engaged in

---

[1] The five-step analysis is conducted as follows:

> The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires him to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler,* 728 F.2d 582, 584 (2d Cir. 1984).

2

substantial gainful activity since June 12, 2007, Plaintiff's application date. At step two, the ALJ found that Plaintiff suffered from the severe impairment of alcoholism. He further found that Plaintiff's diagnoses of depression and mild degenerative disc disease were medically determinable but not severe. The ALJ concluded that Plaintiff's pulmonary embolism, chronic obstructive pulmonary disease, and seizures were not medically determinable.

At the third step of the analysis, the ALJ found that Plaintiff experienced mild restrictions in activities of daily living and mild difficulties in social functioning. He also found that Plaintiff had moderate difficulties with concentration. He noted that Plaintiff's cognitive testing in 2008 revealed that Plaintiff scored in the low normal range with a poor verbal memory score. The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. In concluding that Plaintiff had the RFC to perform the "full range of light work,"[2] the ALJ gave considerable weight

---

> If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts[v. Barnhart],* 388 F.3d [377,] 383 [2d Cir. 2004], and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue,* 566 F.3d 303, 306 (2d Cir. 2009)[.]

*Zokaitis v. Astrue,* 2010 WL 5140576, at *5-6 (D. Vt. Oct. 28, 2010).

[2] The regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range

to the October 2007 report of Plaintiff's treating physician, Dr. Ruth Crose, who opined that Plaintiff was capable of performing a moderate stress job. The ALJ found this opinion consistent with that of Dr. Leslie Abramson, the State Agency medical examiner, who concluded that Plaintiff could perform "at least light work." (AR 14.) Dr. Crose updated that opinion in September 2009, in which she indicated that Plaintiff experienced greater physical limitations, such as in his abilities to stand, sit, and tolerate stress, as well as a worsening lung function. The ALJ found that Dr. Crose's September 2009 opinion was inconsistent with the medical record and he gave it little weight. The ALJ also found certain parts of Plaintiff's testimony consistent with the ALJ's conclusion that Plaintiff could perform the full range of light work.

Proceeding to the fifth step, the ALJ found that Plaintiff was unable to perform his past relevant work as a truck driver, but that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. As a result, the ALJ concluded that Plaintiff was not disabled.

The Decision Review Board selected Plaintiff's claim for review, but did not perform a review within the required ninety-day period. As a result, on March 5, 2010, the ALJ's decision became the final decision of the Commissioner and subject to judicial review. Plaintiff filed this appeal on May 10, 2010, pursuant to 42 U.S.C. § 405(g), which gives this court jurisdiction to review final decisions of the Commissioner denying benefits under Title XVI of the Social Security Act.

## II. Analysis and Conclusions of Law.

### A. Standard of Review.

In reviewing the Commissioner's decision, the court conducts a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the

---

> of light work, [the claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b).

correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citation omitted). The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached," *Barbato v. Astrue*, 2010 WL 2710521, at *1 (W.D.N.Y. July 7, 2010) (internal quotation marks and citation omitted), and must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence. *Estate of Landers v. Leavitt*, 545 F.3d 98, 113 (2d Cir. 2008) (quotation marks and citation omitted). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks and citation omitted). It thus must be "'more than a mere scintilla'" of evidence scattered throughout the record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y., Inc. v. NLRB*, 305 U.S. 197, 229 (1938)). An ALJ must set forth his or her findings with "sufficient specificity" to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

"Where the weight of the evidence . . . does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed." *Groff v. Comm'r of Soc. Sec.*, 2008 WL 4104689, at *2 (N.D.N.Y. Sept. 3, 2008) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). The Second Circuit described the thrust of judicial review as ensuring "a just and rational result between the government and a claimant, without substituting a court's judgment for that of the Secretary, and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having 'rational probative force.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Consol. Edison Co.*, 305 U.S. at 230).

### B. Whether the ALJ Erred in Assessing Plaintiff's Impairments.

Plaintiff first contends that the ALJ erred in assessing Plaintiff's impairments because: (1) he concluded that Plaintiff's chronic obstructive pulmonary disease ("COPD") did not constitute a medically determinable impairment; (2) he did not properly evaluate Plaintiff's cervical spine condition; and (3) he failed to consider

5

Plaintiff's cognitive limitations. The Commissioner contends that the ALJ properly evaluated the severity of Plaintiff's alleged impairments.

At step two of the sequential evaluation process, an ALJ must determine if a claimant has a medically determinable impairment and whether that impairment is "severe" such that it significantly limits the claimant's physical or mental ability to do basic work activities. An impairment is "not severe" when medical and other evidence establish a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. § 416.921(a); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *1 (July 2, 1996). Basic work activities involve "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . " *Gibbs v. Astrue*, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008) (quoting 20 C.F.R. § 404.1521(b)). The Second Circuit has held that step two is limited to "screen[ing] out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (citations omitted). If the disability claim rises above the *de minimis* level, "then the analysis must proceed to step three." *Mattei v. Barnhart*, 2003 WL 23326027, at *6 (E.D.N.Y. Dec. 31, 2003).

### 1. Plaintiff's COPD.

Plaintiff claims that he experienced shortness of breath and diminished lung function, and that he suffered from COPD. COPD is

> a progressive disease that makes it hard to breathe. "Progressive" means the disease gets worse over time. COPD can cause coughing that produces large amounts of mucus (a slimy substance), wheezing, shortness of breath, chest tightness, and other symptoms. Cigarette smoking is the leading cause of COPD. Most people who have COPD smoke or used to smoke.

*Gibson v. Astrue,* 2010 WL 3655857, at *3 n.9 (N.D. Ga. Sept. 13, 2010) (citation omitted).

In concluding that Plaintiff's COPD was not a medically determinable impairment, the ALJ found that "there [was] no testing in the record" (AR 10) that confirmed the diagnosis, and that all related testing either ruled out this condition or negated the likelihood that Plaintiff has COPD. The ALJ relied on a chest x-ray from

6

May 2006 that revealed clear lungs, and Plaintiff's November 2006 performance on a stress test showing good exercise tolerance. The ALJ acknowledged that a chest CT taken in October 2007 revealed mild COPD, but that pulmonary function testing "taken three months later ruled o[ut] COPD and emphysema." (AR 10, citing test from January 12, 2007, AR 246). The ALJ recognized that an October 2009 pulmonary function test "revealed a 10% diminished capacity" compared to a previous test, but noted that Plaintiff's doctor had attributed that result to smoking. (AR 11.)

      The ALJ's conclusion that Plaintiff's COPD was not a medically determinable impairment is not supported by substantial evidence. Although the ALJ stated that Plaintiff's October 2007 test showing mild COPD was followed, three months later, with a test that came back with "negative results," the "later" test results cited by the ALJ, that supposedly ruled out COPD and emphysema, were from January 2007, ten months *before*, not three months *after*, the October 2007 test showing mild COPD. Consequently, the October 2007 test showing mild COPD was not undermined by a later test that ruled out COPD. The ALJ's reliance upon this incorrect time-line served as the basis for his conclusion that Plaintiff's COPD was not a medically determinable impairment. On that basis alone, the Commissioner's decision must be remanded. Substantial evidence supporting a conclusion contrary to that reached by the ALJ underscores the appropriateness of that result.

      For example, although the ALJ correctly noted that test results from 2006 and early 2007 indicate no COPD, thereafter the record is replete with evidence of Plaintiff's worsening lung condition, including emergency room and doctor visits where Plaintiff complained of chest pain and shortness of breath (AR 173, 176, 178, 201, 238, 261, 264, 349, 371-374, 462, 486, 490, 502, 522, 539-542), and references to COPD and/or emphysema in doctor's notes. (AR 176, 179, 205, 232, 239, 240, 265, 318, 332, 418-422, 425, 426, 453, 519, 529, 535.) In addition, a May 2008 chest x-ray revealed "[u]pper respiratory infection most likely viral with an acute exacerbation of COPD." (AR 372.) *See Kochanek v. Astrue*, 2010 WL 1705290, at *4 (N.D.N.Y. Apr. 13, 2010) (stating that the shortness of breath that caused plaintiff to make trips to the hospital was strong

evidence that plaintiff's breathing difficulties were more than a *de minimis* impairment, and would likely have more than a minimal effect on his ability to work under step two of the evaluation process). The record also shows that Plaintiff consistently used two or three different kinds of prescription inhalers to address his breathing problems. The only post-2007 medical record to which the ALJ referred was Plaintiff's October 2009 pulmonary function test, which showed a 10-15% diminished lung capacity when compared with a 2007 test. The ALJ cited the reviewing doctor's comment that Plaintiff's smoking had caused that deterioration. Since smoking can cause (and exacerbate) COPD, *see Gibson,* 2010 WL 3655857, at *3 n.9, the October 2009 test results do not rule out a finding that Plaintiff's COPD was a medically determinable impairment.

In sum, the ALJ's conclusion that Plaintiff's COPD was not medically determinable was based on the ALJ's reliance on an incorrect time-line concerning the results of Plaintiff's tests and is not supported by substantial evidence. *See Groff,* 2008 WL 4104689, at *6 ("With this determination the ALJ not only provides an incorrect recitation of the medical record, but also evinces an erroneous understanding of the nature of the [impairment] and the treatment of such condition," leading the ALJ to erroneously conclude "that there was an absence of a medically determinable impairment.").

### 2. Plaintiff's Cervical Spine Condition.

Plaintiff argues that the ALJ also erred in concluding that his degenerative disc disease was not a severe medically determinable impairment. Plaintiff points to a cervical MRI, taken in August 2009, that confirmed a "moderate" lateral disc protrusion with left-sided nerve root sleeve impingement at C6-7, in addition to mild narrowing at the C4 nerve root due to a C3-4 disc protrusion. The Commissioner contends that the ALJ's conclusion was supported by substantial evidence.

In finding that Plaintiff's degenerative disc disease was medically determinable but not severe, the ALJ relied on a hospital consultation note documenting Plaintiff's complaints of bilateral forearm pain. The consultation note interpreted an August 2009

8

electromyography test, which indicated an "essentially unremarkable set of results" concerning Plaintiff's forearm pain that were "not suggestive of left or right carpal tunnel entrapment or ulnar nerve entrapment across the right or left elbow or wrist, of polyneuropathy or of other abnormality as far as the testing went." (AR 519.) The consultation note further stated that Plaintiff's "range of motion is excellent in all quadrants, rotation, extension, flexion." (AR 519.) While Plaintiff had tenderness at the C7 area, the note indicated: "no lesion, swelling, or any abnormality there. His hands show normal intrinsic strength. There is no muscle wasting. He has normal pulses bilaterally. He has a normal motor exam for biceps, triceps, and deltoid." (AR 519.) Based on those statements, the ALJ determined that Plaintiff's cervical spine condition was not severe.

Plaintiff points to no objective medical evidence that shows that the limitations caused by his spine condition were severe. While the MRI indicated some abnormality, Plaintiff bears the burden at step two of proving that his impairment was severe, *see Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004), and he did not carry that burden. The court thus finds the ALJ's conclusion on this issue is supported by substantial evidence, and therefore GRANTS the Commissioner's request to affirm the Commissioner's decision on this issue.

### 3. Plaintiff's Cognitive Limitations.

Plaintiff contends that the ALJ committed clear error when he failed to adequately consider Plaintiff's cognitive limitations in memory and processing speed, objectively verified through neuropsychological testing in October 2008, as evidence of a severe impairment. As the Commissioner correctly points out, the ALJ considered this impairment at step three, when he noted that, with regard to concentration, Plaintiff had moderate difficulties, and that Plaintiff scored in the low normal range of neurocognitive tests. The ALJ also considered these limitations, among others, at step four. Plaintiff did not allege any cognitive limitations when he applied for benefits or at the hearing before the ALJ. Since the ALJ considered Plaintiff's alleged cognitive limitations at other steps in his analysis, any error by the ALJ in failing to include this impairment at step two was

harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (stating that an ALJ commits harmless error at most if he neglects to list an impairment at step two but proceeds to analyze the impairment's effects in his subsequent analysis); *Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003) (collecting cases establishing that doctrine of harmless error is "fully applicable" to reviews of disability denials). The court finds that the ALJ did not err in assessing Plaintiff's cognitive limitations and therefore GRANTS the Commissioner's request to affirm the Commissioner's decision on this issue.

### C. Whether the ALJ Erred in Determining Plaintiff's Residual Functional Capacity.

Plaintiff contends that the ALJ made two errors when assessing his RFC. First, he asserts that the ALJ erred when he assessed Plaintiff's credibility concerning his impairments. Second, Plaintiff claims that the ALJ erred when he refused to give controlling weight to the September 2009 opinion of Plaintiff's physician, Dr. Crose, thereby running afoul of the treating physician rule. Plaintiff maintains that these errors led to the ALJ's erroneous conclusion at step five that he was not disabled. The Commissioner counters that the ALJ properly evaluated Plaintiff's RFC, both by giving appropriate weight to the physician's opinion and by properly evaluating Plaintiff's credibility.

At step four, the ALJ determines whether a claimant retains the RFC to perform his or her past relevant work. 20 C.F.R. § 416.920(a)(4). The ALJ first considers the claimant's RFC—the ability to do work activities on a sustained basis despite all of the claimant's mental and physical limitations. *See* 20 C.F.R. § 404.1545(a). Second, the ALJ considers relevant medical and other evidence. 20 C.F.R. § 416.945(a). Third, the ALJ considers whether a claimant's RFC precludes the performance of his past relevant work. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

### 1. Plaintiff's Credibility.

When evaluating the intensity and persistence of symptoms,[3] to determine how those symptoms limit the claimant's capacity for work, the ALJ is required to make "a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects[.]" SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). In assessing credibility, the ALJ will consider several factors, including: the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes to alleviate the symptoms; and other treatment or measures to relieve those symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii); SSR 96-7p, 1996 WL 374186, at *3. If the ALJ "decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the [c]ourt to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Notwithstanding this finding, the ALJ concluded that Plaintiff's statements concerning "the intensity, persistence and limiting effects of [his] symptoms" were not credible to the extent they were inconsistent with a RFC of light work. (AR 13.) In discounting Plaintiff's complaints of shortness of breath, the ALJ pointed to a January 2007 statement Plaintiff made to a doctor that he did not have shortness of breath on a consistent basis, but that he may have it when walking up a hill. Acknowledging that Plaintiff's pulmonary function had "decreased somewhat" since 2007, the ALJ considered Plaintiff's "failure to stop smoking [as] evidence that his breathlessness is not as debilitating as his testimony would otherwise suggest." (AR 13.) The ALJ also found that Plaintiff's testimony that he could lift "quite a bit" and manage a

---

[3] The regulations provide that, when determining whether a claimant is disabled, the ALJ will consider all of the claimant's symptoms, such as pain, fatigue, and shortness of breath, because symptoms "sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone[.]" 20 C.F.R. § 404.1529(c)(3).

11

fairly active lifestyle, manifested by helping his daughter get ready for school, caring for two dogs, taking out the trash, and carrying firewood into the house, consistent with an ability to perform light work. The ALJ's credibility assessment, however, may have been tainted by his error in the time-line at step two wherein he found that test results had supposedly ruled out COPD and emphysema, when they did not.

Another basis for the ALJ's adverse credibility finding in relation to Plaintiff's breathing issues was that Plaintiff failed to stop smoking, despite being urged to do so by his doctors.[4] Courts, however, have observed that some people with COPD continue to smoke solely because of their addiction to nicotine:

> Given the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health. One does not need to look far to see persons with emphysema or lung cancer—directly caused by smoking—who continue to smoke, not because they do not suffer gravely from the disease, but because other factors such as the addictive nature of the products impacts their ability to stop. This is an unreliable basis on which to rest a credibility determination.

*Riechl v. Barnhart*, 2003 WL 21730126, at *13 (W.D.N.Y. June 3, 2003) (quoting *Shramek v. Apfel*, 226 F.3d 809, 812-13 (7th Cir. 2000)); *see also Lavallee v. Astrue*, 2011 WL 49582, at *1 (D. Conn. Jan. 6, 2011) ("[T]o discount the severity of plaintiff's

---

[4] It is unclear if the ALJ was tacitly referring to 20 C.F.R. § 404.1530(a) and (b) when he made this observation. Those regulations state, in relevant part: "In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work .... If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits." If the ALJ was relying on 20 C.F.R. § 404.1530,

> he failed to cite any evidence in the record indicating that plaintiff's condition would improve or that [his] ability to work would increase if [he] were to stop smoking. *See, Shramek v. Apfel*, 226 F.3d at 812-13 ("Essential to a denial of benefits pursuant to section 404.1530 is a finding that if the claimant followed [his] prescribed treatment [he] could return to work.") (citation and footnote omitted).

*Riechl v. Barnhart*, 2003 WL 21730126, at *13. Plaintiff's treating physician indicated in 2007 and 2009 that Plaintiff's lung function would likely not improve even if he quit smoking.

12

COPD due to his own failure to heed his physicians' advice to stop smoking is unsound in the circumstances."). The cases demonstrate that an ALJ errs in finding that a claimant's failure to stop smoking automatically supports a conclusion that his or her breathing symptoms are not severe.

The ALJ's final ground for finding incredible Plaintiff's testimony of his breathing difficulties was Plaintiff's description of his daily activities. The ALJ pointed to Plaintiff's testimony that he carried firewood and took out the garbage as evidence that he could perform light work. While Plaintiff claimed that he could lift "quite a bit," he added that he couldn't lift "for any period of time. I can pick it up and set it back down." (AR 30.) Courts are mindful that a significant difference exists between sporadic daily activities and working a forty-hour week. *See Polidoro v. Apfel*, 1999 WL 203350, at *8 (S.D.N.Y. Apr. 12, 1999) (stating that "[a] claimant's participation in the activities of daily living will not rebut his or her subjective statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time comparable to those required to hold a sedentary job."). For the foregoing reasons, the court remands the ALJ's credibility determination for a redetermination of the issue, in conjunction with a corrected time-line concerning Plaintiff's COPD and a re-examination of the record as a whole.

### 2. Treating Physician Rule.

Plaintiff asserts that the ALJ ran afoul of the treating physician rule when he afforded little weight to the September 2009 opinion of Plaintiff's treating physician, Dr. Crose. The Secretary responds that Dr. Crose's 2009 opinion was inconsistent with other record evidence, particularly regarding Plaintiff's arm limitations and depression.

Generally, the opinion of a claimant's treating physician as to the nature and severity of an impairment is entitled to considerable deference and is given controlling weight, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). In addition, "[t]he treating physician rule recognizes that a treating physician's opinion should carry more weight

than a nontreating physician's opinion." *Roma v. Astrue*, 2010 WL 3418166, at *4 (D. Conn. Aug. 24, 2010). The regulations recognize that treating physicians "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). When the treating physician's opinion is not given controlling weight, the regulations require the ALJ to assess the following factors: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). As a result, the ALJ "cannot arbitrarily substitute his own judgment for competent medical opinion," *McBrayer v. Sec'y of HHS*, 712 F.2d 795, 799 (2d Cir. 1983) (citation omitted), and must provide "good reasons" before discounting a treating physician's opinion. *Schaal*, 134 F.3d at 505.

     Dr. Abramson, the State agency medical examiner, completed a RFC form on September 13, 2007, assessing Plaintiff's RFC from June 1, 2007 to September 2007 by examining Plaintiff's medical records. Dr. Abramson concluded that it was appropriate to rate Plaintiff's RFC as light work, although she also opined that heat, humidity and fumes constituted environmental limitations on this ability due to Plaintiff's pulmonary embolism, COPD, and emphysema. The ALJ gave "little weight" to Dr. Abramson's environmental and postural limitations, but gave "great weight" to the remainder of her opinion. (AR 14.)

     In October 2007, Dr. Crose completed a RFC Questionnaire (Physical) wherein she stated she had seen Plaintiff once every two months since July 2006. She found that Plaintiff had a pulmonary embolus, decreased lung function, increased pain and shortness of breath, depression, and knee pain, that there was "little chance of improving lungs even if [patient] quit[s] smoking—which would slow progression of disease." (AR 426.)

Dr. Crose opined that Plaintiff was capable of a moderate stress job and that his impairments would produce good and bad days, but it was unlikely that Plaintiff would have to miss work on bad days. She identified environmental limitations of fumes, heat, and humidity as bothering his lungs. The ALJ found that Dr. Crose's 2007 opinion was "fairly consistent with the medical evidence on record and the opinions of Dr. Abramson, and is consistent with the ability to perform at least light work. As such, this opinion is given considerable weight." (AR 14.)

In September 2009, Dr. Crose completed a "Medical Update," which set forth how Plaintiff's medical condition and functional capacity had changed since her 2007 opinion.[5] She noted Plaintiff's worsening lung function and shortness of breath walking up a hill. She indicated that Plaintiff had COPD, and that improvement in his lung function was unlikely. She stated that Plaintiff's symptoms frequently would interfere with attention and concentration during a typical eight-hour day; that he was capable of only a low stress job; and that he may need to take breaks depending on the activity level of the job and his shortness of breath. She stated that dust, chemicals, and fumes constituted environmental limitations. Dr. Crose summarized Plaintiff's condition by stating that his memory level and lung function had decreased, his depression caused mood swings and blackout seizures, and his neck disc protrusion caused arm pain. The ALJ interpreted Dr. Crose's 2009 report as explaining "that the worsening of [Plaintiff's] condition could be attributed in part to depression, mood swings, and decreasing memory." (AR 14.) The ALJ gave the 2009 report "little weight," as the medical record concerning Plaintiff's depression and limited arm function was not consistent "with the level of impairment set forth therein." (AR 14.) He found that Dr. Abramson's report,

---

[5] The Commissioner questions the ALJ's and the Plaintiff's characterization of the 2007 and 2009 questionnaires as opinions of Dr. Crose because the documents were addressed to a physician's assistant, who signed the reports in addition to Dr. Crose. The Commissioner notes that physician's assistants are not considered "treating sources" under the regulations. Cases have held that when a doctor and a physician's assistant sign the same reports, "the opinions [are] those of [the treating physician] as well as those of [the physician's assistant.]." *Riechl*, 2003 WL 21730126, at *11.

15

Dr. Crose's 2007 report, Plaintiff's testimony, and the medical evidence on record supported his conclusion that Plaintiff had the RFC to do the full range of light work.

Pursuant to the treating physician's rule, Dr. Crose's 2007 and 2009 reports warranted controlling weight if they were supported by, and not inconsistent with, other evidence in the record. *See Burgess*, 537 F.3d at 128. Here, the ALJ found the 2009 report inconsistent with the record. In circumstances where an ALJ finds an inconsistency in the opinions of a treating physician or finds a treating physician's opinion not supported by objective medical evidence, the ALJ is required to re-contact the physician for clarification. *See Hartnett v. Apfel*, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998) ("[I]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly.") (citations omitted); SSR 96-5p, 1996 WL 374183, at *6 (July 2, 1996) ("[I]f the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."). There is no indication that the ALJ contacted Dr. Crose for clarification concerning the differences in her two reports. The ALJ's failure to adequately develop the record in this regard is grounds for remand. *See Tornatore v. Barnhart*, 2006 WL 3714649, at *3 (S.D.N.Y. Dec. 12, 2006) (citing cases and remanding due to, *inter alia*, the ALJ's failure to develop the record by re-contacting the treating physician for clarification); *see also Shaw*, 221 F.3d at 134 ("For the ALJ to conclude that plaintiff presented no evidence of disability. . . , yet to simultaneously discount the medical opinion of his treating physician, violates his duty to develop the factual record, regardless of whether the claimant is represented by legal counsel.") (citations omitted).

A second issue with regard to the ALJ's assessment of Dr. Crose's 2009 report is his finding that Dr. Crose's notes "have consistently noted no depression throughout the entire relevant period"; that the notes gave "little indication . . . that this condition became much more serious in 2009"; and that Plaintiff's depression was "noted to be

16

stable" in 2007. (AR 13, 14.) However, Dr. Crose's medical notes consistently referred to Plaintiff's depression. *See* AR 173, 176, 178, 183, 188, 198, 200, 201, 261, 403, 431, 432, 435, 438.

The ALJ also did not note any inconsistency, much less any impact, on Plaintiff's abilities to work, arising from Plaintiff's severe impairment of alcoholism, his medically determinable impairment of mild degenerative disc disease, or his non-medically determinable impairments of pulmonary embolism, chronic obstructive pulmonary disease, and seizures. He was required to consider all of Plaintiff's impairments at step four, 20 C.F.R. § 404.1545(a)(2), even those that were not medically determinable, and this he did not do.

Finally, the ALJ rejected both Dr. Abramson's and Dr. Crose's 2007 reports to the extent that they indicated environmental limitations should be taken into account on Plaintiff's job because they were based on the diagnoses of COPD, emphysema, and pulmonary embolism which he had found to be non-medically determinable. This conclusion may also have been tainted by the incorrect time-line discussed at step two. Because the ALJ did not follow the treating physician rule, the determination of Plaintiff's RFC must be remanded.

### D. Remand is Warranted.

"Sentence four of Section 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the cause for a rehearing.'" *Butts*, 388 F.3d at 385 (quoting 42 U.S.C. § 405(g)). In this case, the court concludes that reversal and remand is appropriate to reassess the following issues: (1) the ALJ's determination at step two that Plaintiff's COPD was not a medically determinable impairment; (2) the adverse credibility finding concerning Plaintiff's symptoms of shortness of breath; and (3) the ALJ's failure to follow the treating physician rule at step four. The ALJ's conclusion that Plaintiff had the RFC to perform light work was based, in part, on errors related to these issues. *See Scott-Flax v. Astrue*, 2007 WL 2263879, at *5 (W.D. Va. Aug. 2, 2007) ("These step-two errors inevitably

infected the ALJ's subsequent analytical steps, including steps three, four and five, and require remand.").

## CONCLUSION

For the reasons stated above, the court hereby remands this case for further administrative proceedings consistent with this Opinion and Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 17th day of May, 2011.

_____
Christina Reiss, Chief Judge
United States District Court